# EXHIBIT "C"

## BID AWARD CONTRACT

This **BID AWARD CONTRACT** ("Agreement") is by and between the **ST. CLAIR COUNTY BOARD OF EDUCATION** (the "Board"), and **WILLCAM INC. DBA VANGUARD CLEANING SYSTEMS**, a **CUSTODIAL SERVICE PROVIDER** ("Service Provider").

### RECITALS

A. The Board has solicited competitive bids for certain services in accordance with the bid specifications, terms, and conditions set forth in Invitation to Bid Number **SCC 23/24-01A FULL CUSTODIAL SERVICES**, which is attached hereto as Exhibit A (the "Bid").

B. Service Provider was the lowest responsible bidder meeting the specifications set forth in the Bid. Service Provider's bid price is attached hereto as Exhibit B (the "Bid Price").

C. The Board has awarded the Bid to Service Provider at the Bid Price.

D. The parties desire to provide for Service Provider's services at the Bid Price in accordance with the terms and conditions of the Bid and this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, the parties agree as follows:

1. <u>Bid Specifications.</u> The bid specifications, terms, and conditions set forth in the Bid attached hereto as Exhibit A are expressly incorporated herein by reference.

2. <u>Contract Term (Period of Service).</u> This Agreement shall begin on **AUGUST 21, 2023** and shall terminate on **AUGUST 20, 2024**, unless terminated sooner as set forth herein. This Agreement shall be renewable annually (for up to four (4) additional years) on the same terms and conditions with the mutual consent of both parties.

3. <u>Termination for Convenience.</u> The Board may terminate this Agreement for any reason upon thirty (30) days written notice to Service Provider. Termination under this clause will not affect any obligations incurred under this Agreement prior to termination. Upon such termination, the Board shall be obligated only with respect to compensation for services satisfactorily performed through the date of termination.

4. <u>Termination for Cause.</u> If Service Provider fails to perform any of its obligations under this Agreement and such failure continues for ten (10) days after notice of such failure is given by the Board to Service Provider, then the Board may immediately, or at any time thereafter, terminate this Agreement by written notice to Service Provider, without prejudice to any remedies (whether set forth in this Agreement or provided for by law or in equity) which might otherwise be available to the Board for such failure. Upon such termination, the Board shall be obligated only with respect to compensation for work satisfactorily performed through the date of termination.

5. **Scope of Work.** Service Provider shall provide the services as detailed and identified in the Bid. Without limiting the responsibility of Service Provider for the proper conduct of its personnel and the proper performance of its services to be rendered, the conduct of the personnel of Service Provider shall be guided by the rules and regulations as set forth in the Bid and any additional special written instructions as may be issued by the Board to Service Provider through the Board's designated agent. Service Provider acknowledges and agrees that Service Provider shall be under the direct supervision of the Principal of the respective school or schools to which Service Provider is assigned. Service Provider agrees that the services to be provided will be performed by qualified, careful, and efficient employees in strict conformity with the best practices and highest applicable standards. Service Provider further agrees that upon request of the Board, Service Provider shall remove from services under this Agreement, any of its employees who, in the opinion of the Board, are guilty of improper conduct or are not qualified to perform the work assigned to them.

6. **Compensation.** The Board shall pay Service Provider for the services rendered under this Agreement in accordance with the Bid Price attached hereto as Exhibit B and expressly incorporated herein by reference. If the Bid Price is presented on an annual basis, the Board shall pay the total Bid Price by making twelve (12) monthly payments in an amount equal to one-twelfth (1/12th) the total Bid Price. The payments shall be due and payable on the first day of each month during the term of this Agreement.

7. **Risks.** Service Provider shall provide for all proper safeguards and shall assume all risks incurred in performing its services under this Agreement.

8. **Independent Contractor.** Service Provider is an independent contractor and is not an employee, servant, agent, partner, or a party to a joint venture with the Board. The Board shall determine the work to be done by Service Provider, but the Service Provider shall determine the means by which Service Provider accomplishes the work specified by the Board. It is understood that the Board does not agree to use Service Provider exclusively. It is further understood that Service Provider is free to contract for similar services to be performed for other individuals while under contract with the Board

Service Provider shall not be entitled to receive any benefits that employees of the Board are entitled to receive including, but not limited to, workers' compensation, unemployment compensation, medical insurance, life insurance, paid vacations, paid holidays, pension, or social security on account of Service Provider's work for the Board. Payroll taxes, including federal, state and local taxes, shall not be withheld or paid by the Board on behalf of Service Provider. Service Provider shall not be treated as an employee with respect to the services performed hereunder for federal or state tax purposes. Service Provider shall be responsible to pay all taxes as mandated by law. Service Provider shall be solely responsible for paying any and all taxes, FICA, workers' compensation, unemployment compensation, medical insurance, life insurance, paid vacations, paid holidays, pension, profit sharing plan, and other benefits for Service Provider or any of its employees, servants or agents.

Service Provider is an independent contractor and nothing contained in this Agreement shall be construed to constitute either party as the partner, employee, or agent of the other nor shall either party have any authority to bind the other party in any respect except as otherwise expressly provided herein.

9. *Conformance to Laws, Regulations, and Policies.* Service Provider shall observe and abide by all applicable laws, regulations, and policies pertaining to the services performed under this Agreement.

10. *Background Check.* All employees, agents, or persons provided by Service Provider to perform services under this Agreement shall have a satisfactory background check in accordance with the rules and regulations of the Board and the Alabama Department of Education.

11. *Confidentiality.* Service Provider agrees to maintain all information provided by the Board or acquired by Service Provider in the course of performing the services under this Agreement in strict confidence and to use such information solely for the purpose of performing the services.

12. *FERPA.* Service Provider acknowledges that the Board, as an educational institution, is subject to legal obligations with respect to the privacy of student information. Service Provider acknowledges that data collected in connection with Service Provider's services may include personally identifiable student education records ("Education Records"), as such term is defined under the Family Educational Rights and Privacy Act and regulations promulgated under the Act ("FERPA"). To the extent that said data includes Education Records, Service Provider acknowledges and agrees that (i) Service Provider shall be deemed to be a "School Official" under the Board's Student Education Records Policy and must abide by the terms and conditions of this Policy and FERPA with respect to Service Provider's use and handling of Education Records; (ii) Service Provider shall be under the Board's direct control with respect to use and maintenance the handling of Education Records; and (iii) without limiting any other provision of this Agreement, Service Provider may not disclose the information to any third party without the prior written consent of the student as required by FERPA. Service Provider shall also take any action reasonably requested by the Board to adhere to its obligations under FERPA or otherwise protect the privacy and confidentiality of Education Records.

13. *Equal Employment Opportunity.* The Board complies with all laws relating to Equal Employment Opportunity and Civil Rights. Furthermore, this Agreement is issued upon the condition that Service Provider complies with all of the aforementioned laws and regulations.

14. *Indemnification.* Service Provider agrees to indemnify and hold harmless the Board, and its officers, elected officials, employees and agents, from and against all claims, actions, suits, damages, liabilities and costs (including, without limitation, legal fees) resulting from or arising out of any of Service Provider's actions under this Agreement. Service Provider's indemnification obligations shall survive any termination of this Agreement.

15. *Insurance.* Service Provider shall provide Comprehensive General Liability Insurance for personal/ bodily injury (including death) and property damage claims up to

$1,000,000 per occurrence resulting from or arising out of any of Service Provider's actions under this Agreement, and Comprehensive Automobile Liability Insurance (including coverage for all owned, non-owned, and hired vehicles) with a combined single limit of $1,000,000 per accident. In addition, Service Provider shall provide Workers Compensation and Employers Liability Insurance (WC & EL) for its own employees that meets statutory limits required by Alabama law, if applicable. Prior to rendering services under this Agreement, Service Provider shall furnish the Board with a copy of a certificate of insurance evidencing the insurance required under this Section, certifying that it is in full force and effect, providing for 15 days' prior notice to the Board of any cancellation or modification of the insurance, and naming the Board as an additional insured.

16. <u>Alabama Immigration Law Compliance</u>. Service Provider agrees that it will fully comply with the Immigration Reform and Control Act of 1986, as amended by the Immigration Act of 1990, and the Beason-Hammon Alabama Taxpayer and Citizen Protection Act, which makes it unlawful for an employer in Alabama to knowingly hire or continue to employ an alien who is or has become unauthorized with respect to such employment or to fail to comply with the I-9 requirements or who fails to use E-Verify to verify the eligibility to legally work in the United States for all of its new hires who are employed to work in the State of Alabama. Without limiting the foregoing, Service Provider shall not knowingly employ, hire for employment, or continue to employ an unauthorized alien, and shall have an officer or other managerial employee who is personally familiar with the Service Provider's hiring practices to execute an affidavit to this effect on the form supplied by the Board and return the same to the Board. Service Provider shall also enroll in the E-Verify Program prior to performing any work, or continuing to perform any ongoing work, and shall remain enrolled throughout the entire course of its performance hereunder, and shall attach to its affidavit the E-Verify Program for Employment Verification and Memorandum of Understanding and such other documentation as the Board may require to confirm Service Provider's enrollment in the E-Verify Program. Service Provider agrees not to knowingly allow any of its subcontractors, or any other party with whom it has a contract, to employ in the State of Alabama any illegal or undocumented aliens to perform any work in connection with this Agreement, and shall include in all of its contracts a provision substantially similar to this paragraph. If Service Provider receives actual knowledge of the unauthorized status of one of its employees in the State of Alabama, it will remove that employee from the project, jobsite or premises of the Board and shall comply with the Immigration Reform and Control Act of 1986, as amended by the Immigration Act of 1990, and the Beason-Hammon Alabama Taxpayer and Citizen Protection Act. Service Provider shall require each of its subcontractors, or other parties with whom it has a contract, to act in a similar fashion. If Service Provider violates any term of this provision, this Agreement will be subject to immediate termination by the Board. To the fullest extent permitted by law, Service Provider shall defend, indemnify and hold harmless the Board from any and all losses, consequential damages, expenses (including, but not limited to, attorneys' fees), claims, suits, liabilities, fines, penalties, and any other costs arising out of or in any way related to Service Provider's failure to fulfill its obligations contained in this paragraph. In accordance with Ala. Code § 31-13-9(k), by signing this Agreement, Service Provider affirms, for the duration of this Agreement, that Service Provider will not violate federal immigration law or knowingly employ, hire for employment, or continue to employ an unauthorized alien within the State of Alabama. Furthermore, a contracting party found to be in violation of this provision shall be deemed in breach of the agreement and shall be responsible for all damages resulting therefrom.

17. **Alabama Public Contract Compliance.** In accordance with Ala. Code § 41-16-5, by signing this Agreement, Service Provider represents and agrees that it is not currently engaged in, nor will it engage in, any boycott of a person or entity based in or doing business with a jurisdiction with which the State of Alabama can enjoy open trade.

18. **Entire Agreement; Modification.** This Agreement contains the parties' entire understanding and may not be modified except in written form signed by both parties. Any modification or amendment of the terms and conditions of this Agreement shall not be valid unless established in writing and signed by authorized representatives of the parties.

19. **Severability.** Should any portion of this Agreement be found illegal or otherwise unenforceable, that portion shall be severed from this Agreement and the rest of the Agreement shall be enforceable as written.

20. **Assignment.** This Agreement may not be sold, assigned, or transferred in whole or in part by Service Provider, nor may Service Provider sublet or subcontract any item of service or responsibility covered by this Agreement, without the express written consent of the Board.

21. **Waiver.** Failure by either party at any time to require performance by the other party or to claim a breach of any provision of this Agreement shall not be construed as affecting any subsequent breach or the right to require performance or to claim a breach with respect thereto.

22. **Default.** In the event that either party is in default in performance of its obligations under the terms of this Agreement and has failed to cure the same after ten (10) days from the receipt of notice in writing from the other of such default, then the nondefaulting party shall be entitled to its remedies in law or equity.

23. **Dispute Resolution; Venue.** The parties expressly agree that any controversy or claim arising out of or relating to this Agreement or the breach of any provision hereof shall be decided by the Circuit Court of St. Clair County, Alabama.

24. **Notice.** All communications and notices expressly provided herein shall be sent, by first class mail, postage prepaid, or by a nationally recognized overnight courier for delivery on the following business day, as follows:

To the Board:

St. Clair County Board of Education
410 Roy Drive
Ashville, Alabama 35953
Attn: Superintendent

To Service Provider:

_____
_____
_____
Attn: _____

With Copy To:

John W. Rea, Board Attorney
Trussell, Funderburg, Rea, Bell & Furgerson, P.C.
1905 First Avenue South
Pell City, Alabama 35125

or to such other address as the parties shall be from time to time designate by written notice.

25. <u>Successors and Assigns.</u> This Agreement shall inure to the benefit of the parties and be binding upon the parties, and their approved successors, assigns, heirs, administrators and executors.

26. <u>Governing Law.</u> This Agreement shall be construed under the laws of the State of Alabama.

27. <u>Effective Date.</u> This Agreement is effective as of the date it has been signed by both parties.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties hereto have set their hands and seals the day and year set forth below

ST. CLAIR COUNTY
BOOARD OF EDUCATION

By: _____
    Scott Suttle, Board President

_____
Date

ATTEST:

*/s/ Justin Burns*

Justin Burns, Superintendent

_____
Date

SERVICE PROVIDER:

_____

By: _____

_____
Date

Witness:

_____

_____
Date