

FILED
2024 Jul-19  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

| | | |
|---|---|---|
| **JOHNNY WILLIAMS and** | ) | |
| **WILLCAM, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | **4:24-CV-00617-CLM** |
| **vs.** | ) | |
| | ) | |
| **ST. CLAIR COUNTY BOARD OF** | ) | |
| **EDUCATION, JUSTIN BURNS, individually** | ) | |
| **and in his official capacity as Superintendent** | ) | |
| **of the St. Clair County School Board;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT ST. CLAIR COUNTY BOARD OF EDUCATION'S MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION
_____

Defendant St. Clair County Board of Education ("the Board") moves to dismiss the subject civil action.  As grounds in support thereof, the Board would show that the Plaintiffs lack standing to sue and that the complaint fails to state a claim upon which relief can be granted.

1.      Nominal Plaintiffs Johnny Williams and WILLCAM, LLC purport to predicate federal jurisdiction on an alleged violation of 42 U.S.C. §1981. Specifically, they contend that Williams "is the owner and managing member of [co-plaintiff] WILLCAM, LLC, a janitorial cleaning service" [Doc. 2, ¶ 1],

and that "Plaintiff" was awarded the contract (Doc. 2, ¶ 13).  Plaintiffs further allege that the contract was thereafter terminated "because [Williams] is of the African American race" (Doc. 1, ¶ 22).  The foregoing allegations are contradicted by the complaint itself and are otherwise demonstrably false.

2.     The janitorial services contract that is the centerpiece of the litigation was not awarded to Johnny Williams or to "WILLCAM, *LLC*." Rather, as Exhibit C to the complaint confirms (Doc. 2-3, p. 2), the contract was between the Board and WILLCAM, *INC.*  No publicly available corporate records identify Johnny Williams as having a business relationship with WILLCAM, INC., let alone an ownership interest or managerial role in the company.  That status is apparently held by Brad Green, who is identified as an incorporator and registered agent for WILLCAM, INC.  (See Exhibit A, attached).  Mr. Green is also identified as President of WILLCAM, INC. on several internet sites.  Mr. Green is Caucasian, as is evidenced by social media postings attached as Exhibit B.

3.     Johnny Williams has an apparent business relationship with a separate corporate entity, "J. Williams Janitorial, LLC."  (See Exhibits C, D, and E).  The Board is not alleged to have or to have had a contractual or other business relationship with J. Williams Janitorial, LLC.  Nor is any business or corporate relationship alleged to exist or to have existed between WILLCAM,

INC. and J. Williams Janitorial, LLC.  Finally, Plaintiffs nowhere allege that J.

Williams Janitorial, Inc. or WILLCAM, LLC sought to be awarded either the

contract that was terminated or the contract that was subsequently awarded to

"Perfection" upon WILLCAM's default.  Accordingly, their bid law claim fails to

get out of the gate.

4.     In any case, to the extent federal jurisdiction is alleged to be

predicated on a purported violation of 42 U.S.C. §1981, the complaint fails to

state a claim upon which relief can be granted.  Whatever the relationship, if

any, between Johnny Williams or J. Williams Janitorial, LLC and WILLCAM,

INC., neither Williams nor J. Williams Janitorial, LLC enjoys derivative,

surrogate, or vicarious standing to assert a §1981 claim.  As another Northern

District judge recently explained:

> Section 1981 gives all persons "the same right in every
> State and Territory to make and enforce contracts, to sue,
> be parties, give evidence, and to the full and equal benefit
> of all laws and proceedings for the security of persons
> and property as is enjoyed by white citizens ...." 42
> U.S.C. § 1981(a). "[T]he term 'make and enforce
> contracts' includes the making, performance,
> modification, and termination of contracts, and the
> enjoyment of all benefits, privileges, terms, and
> conditions of the contractual relationship." 42 U.S.C. §
> 1981(b). "Any claim brought under § 1981, therefore,
> must initially identify an impaired 'contractual
> relationship,' § 1981(b), under which the plaintiff has
> rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470,
> 476 (2006).

Here, AllStates entered a written contract with Mr.
Zatta's company, Embedded Software & LabView LLC.
(Doc. 46-1). Payments under the contract are directed to
Embedded Software. (Doc. 46-1, p. 5, ¶ 11). Schedule A
to the contract, a "Work Statement," provides that the
Professional Services Contract between AllStates and
Embedded Software concerns the services of
subcontractor Philip Zatta, a senior test engineer, who
was to earn $100 per hour for his services. (Doc. 46-1, p.
8).

In *Domino's Pizza*, in circumstances much like Mr.
Zatta's, the Supreme Court held that the plaintiff, the sole
shareholder and president of JWM Investments, Inc.,
could not state a § 1981 claim against Domino's Pizza.
*Domino's Pizza, Inc.*, 546 U.S. at 472. "The gravamen of
McDonald's complaint was that Domino's had broken its
contracts with JWM because of racial animus toward
McDonald, and that the breach had harmed McDonald
personally by causing him 'to suffer monetary damages
and damages for pain and suffering, emotional distress,
and humiliation.' " *Domino's Pizza, Inc.*, 546 U.S. at 473.
In his complaint, Mr. McDonald demanded that
Domino's Pizza comply with its obligations under the
contract with JWM Investments, Inc. Mr. McDonald
argued he would have received the benefit of that
performance had Domino's Pizza not discriminated
against him. *Domino's Pizza, Inc.*, 546 U.S. at 474.
Because Mr. McDonald made and performed the
contracts that his company JWM Investments, Inc.
entered with Domino's Pizza, he asked the Supreme
Court to recognize his ability to pursue a claim against
Domino's Pizza under § 1981. *Domino's Pizza, Inc.*, 546
U.S. at 475. The Supreme Court refused his request.
*Domino's Pizza, Inc.*, 546 U.S. at 476.

The Supreme Court found that although Mr. McDonald
identified a contractual relationship in his complaint, "the
one between Domino's and JWM[,]" Mr. McDonald as
shareholder and contracting officer of his corporation had

"no rights and [was] exposed to no liability under the corporation's contracts." *Domino's Pizza, Inc.*, 546 U.S. at 477. The Supreme Court rejected Mr. McDonald's argument that because he "negotiated, signed, performed, and sought to enforce the contract" between his company and Domino's Pizza, the contract was really "his own." The Supreme Court stated that in the same way that Mr. McDonald's company made use of its "corporate form and the rules of agency" during its bankruptcy proceedings to protect Mr. McDonald's personal assets, those same corporate and agency rules prevented Mr. McDonald from pursuing an individual claim against Domino's Pizza under § 1981. *Domino's Pizza, Inc.*, 546 U.S. at 477.

Because "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's," *Domino's Pizza, Inc.*, 546 U.S. at 480, Mr. Zatta cannot stand in the shoes of Embedded Software and assert a direct § 1981 claim against AllStates.

Zatta v. SCI Tech. Inc., No. 5:21-CV-01707-MHH, 2023 WL 11199375, at *1–2 (N.D. Ala. Apr. 26, 2023), *reconsideration denied,* No. 5:21-CV-01707-MHH, 2024 WL 1854532 (N.D. Ala. Mar. 1, 2024), *appeal dismissed,* No. 24-10837, 2024 WL 1829092 (11th Cir. Apr. 26, 2024).  Simply put, neither named plaintiff can "stand in [WILLCAM'S] shoes" to assert a §1981 claim.  *Domino's Pizza, Inc.*, 546 U.S. at 480.

5.     For essentially the same reason, Plaintiffs' conspiracy claim fails. Although not entirely clear, Plaintiffs' theory appears to rest on the premise that the defendants conspired with a company assertedly "owned and controlled by

whites" (Doc. 2, p. 4, ¶ 16) to wrongfully terminate the contract that had ostensibly been awarded to plaintiff(s).  That argument suffers from the same threshold infirmity that dooms the primary claim.  The contract that was terminated was WILLCAM, INC.'s contract, not Plaintiffs'.  Because "[s]ection 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not someone else's,"[1] their conspiracy gambit never gains altitude.  In any event, because Plaintiff cannot establish an underlying claim, its corporate conspiracy claim must be dismissed:

> Conspiracy, standing alone, provides no cause of action. *Allied Supply Co. v. Brown,* 585 So. 2d 33, 36 (Ala. 1991). So a conspiracy claim fails if the underlying act would not support an independent claim. *Triple J Cattle, Inc. v. Chambers*, 621 So. 2d 1221, 1225 (Ala. 1993). *See also Callens v. Jefferson Cty. Nursing Home*, 769 So. 2d 273, 280 (Ala. 2000) ("A plaintiff alleging a conspiracy must have a valid underlying cause of action.").

Roche Diagnostics Corp. v. Priority Healthcare Corp., 407 F. Supp. 3d 1216, 1250 (N.D. Ala. 2019).

6.     Even if the Court could ignore the dispositive implications of WILLCAM's corporate status, Plaintiffs §1981 claim fails.  Plaintiffs essentially allege that, in assertedly violating Alabama's Competitive Bid Law, the Board violated 42 U.S.C. §1981's prohibition against race discrimination in the "making

---

[1] Dominos Pizza, Inc., *supra,* 546 U.S. at 480.

and enforcement of contracts."  Plaintiff's premise is fatally undercut by the principle that "[a]ny claim brought under §1981 . . . must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights . . . ."[2]  An aspiring contractor may have rights under §1981, but only if he has an existing right to make a contract with another party.  Here, the Alabama Competitive Bid Law itself precludes any claim of right to be awarded a contract.  In *Urban Sanitation Corp. v. City of Pell City, Ala.*, 662 F.Supp. 1041 (N.D. Ala. 1986), Judge Propst correctly concluded that the Alabama Competitive Bid Law's "provision for letting the contract to the lowest responsible bidder is *for the benefit of the public* and does not confer on a bidder any right enforceable at law or in equity:"[3]

> It should be noted that the Alabama statute does not require that the contract *be awarded* to the lowest responsible bidder. It only requires that *expenditures* must be made in compliance with the statute.
> ….
> The Supreme Court has recognized that a statute *directing a state agency to confer a benefit under certain circumstances* may create sufficient interest in the benefit that some amount of due process protection must be afforded to ensure that the benefit is distributed as required...." (emphasis added). *Ward v. Downtown*

---

[2] Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006) (internal citation omitted).

[3] Urban Sanitation, 662 F. Supp. at 1043.

> *Development Authority,* 786 F.2d 1526, 1531 (11th
> Cir.1986). Alabama law has not *directed* that a benefit be
> conferred, only that there be no expenditure of funds in
> violation of the statute. This court should not presume to
> create a right more expansive than state law. Plaintiff's
> claim is distinguishable from the claims of parties who
> have acquired status as employees, tenants, etc. Here
> there is no withdrawal of a benefit nor prescribed
> circumstances under which a benefit is directed to be
> conferred.[4]

Thus, even if a plaintiff could establish a violation of the Alabama Competitive

Bid Law, its claims for damages under §1981 are foreclosed as a matter of law.[5]

      7.    Plaintiff fails to state an actionable claim for negligence under state

law because the Board has no actionable duty *to the Plaintiff* as a matter of statute

or tort law.[6]  Even if, *arguendo*, the Board had a duty to *contract* with Plaintiff,

> Alabama courts have recognized that the "line of
> distinction between actions in tort and contract is thin and
> often nebulous in many instances." *Hamner v. Mut. of
> Omaha Ins. Co.*, 270 So. 2d 87, 90 (Ala. Civ. App.
> 1972). While it is difficult to make the distinction in
> some cases, a basic principle derived from the courts is
> "if there is failure or refusal to perform a promise the
> action is in contract; if there is a negligent performance
> of a contractual duty or negligent breach of a duty
> implied by law ... the action may be either in contract or
> tort." *Id. See also Vines v. Crescent Transit Co.*, 85 So.

---

[4] Urban Sanitation, 662 F. Supp. at 1045–46.

[5] *See* Williams v. Columbus Regional Healthcare Systems, Inc., 499 Fed.Appx. 928 (11th Cir. 2012) (unpublished) (Section 1981 claim foreclosed where state law does not create either contractual entitlement or property/liberty interest).

[6] Id. at 1043.

2d 436, 440 (Ala. 1955) (holding that negligent failure to perform a contract is a breach of contract, but if performed negligently, the remedy is in tort.) Stated plainly, if an individual fails to perform a contractual obligation, the wronged party can find relief through a breach of contract action, not tort law. Alabama courts and federal courts applying Alabama law have repeatedly held there is no cause of action in tort law for failure to perform under a contract. *See e.g. U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So. 3d 302, 314 (Ala. 2015) (finding "the proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim, not a wantonness claim."); *Citizens Bank & Tr.* v. *LPS Nat'l Flood LLC*, 51 F. Supp. 3d 1157, 1170 (N.D. Ala. 2014) (holding that federal courts sitting in Alabama have consistently found "that when the duty allegedly breached is the duty created by the contract itself as opposed to the general duty of care owed to everyone, the court must treat the claim as a breach of contract and not as a tort.")

Here, the Plaintiff is not alleging that the Defendant acted negligently in the performance of its duties. He is claiming that the Defendant's failure to act is the basis for the negligence claim. (Doc. 1, ¶ 30). As stated above, Alabama courts and federal courts in Alabama have consistently found that failure to act under a contractual obligation is a breach of contract, not tort. The Plaintiff has not alleged any ways in which the Defendant acted negligently while performing its contractual duties, so there is no cognizable claim under Count II. Therefore, the Plaintiff's claim in Count II of his complaint is dismissed.[7]

---

[7]  Bozeman v. Centricity, Inc., No. 5:19-CV-00487-LCB, 2019 WL 5696173, at *2 (N.D. Ala. Nov. 4, 2019).

8.      Plaintiff's claim for negligent infliction of emotional distress is not actionable in Alabama as it is well-settled that "there is no cause of action for the negligent infliction of emotional distress."[8]

9.      To the extent not otherwise foreclosed, Plaintiffs' state-law-based claims are barred by Article I, §14 of the Alabama Constitution.  The Board is a local agency of the State of Alabama.  As such, it is fully clothed with the State's sovereign immunity.[9]  Moreover, that immunity is absolute as to the Board.  It deprives the Court of subject matter jurisdiction such that the only action that can be taken by the Court is to dismiss the complaint.[10]  Especially as to complaints filed directly against an immune agency such as the Board, the immunity defense is absolute and admits of no exceptions.[11]

For the foregoing reasons, the complaint should be dismissed.

---

[8] Cheatham v. City of Tallassee, No. 2:11-CV-672-WHA, 2012 WL 3890127, at *13 (M.D. Ala. Sept. 7, 2012) (citing Allen v. Walker, 569 So.2d 350, 352 (Ala. 1990)).

[9] Ex parte Hale County Bd. of Educ., 14 So.3d 844 (Ala. 2009).

[10] Ex parte Ala. DOT, 6 So.3d 1126 (Ala. 2008).

[11] See Ex parte Wilcox County Bd. of Education, 285 So.3d 765, 775 (Ala. 2019) ("Actions against the state or against state agencies are absolutely barred by § 14"), citing and quoting Ex parte Alabama Dep't of Finance, 991 So.2d 1254, 1257 (Ala. 2008); Board of School Comm'rs, etc. v. Weaver, 99 So.3d 1210, 1217 (Ala. 2012) (As a state agency, Board of Education is entitled to absolute immunity under §14 as to claims asserted against it); Ex parte Monroe Co. Bd. of Educ., 48 So.3d 621 (Ala. 2010) (immunity accorded a board of education is absolute); Ex parte Bessemer City Bd. of Educ., 143 So.3d 726, 729 (Ala. 2013) (same).

Respectfully submitted this 19th day of July, 2024.

TRUSSELL, FUNDERBURG, REA,
      BELL & FERGUSON, P.C.
1905 First Avenue South
Pell City, Alabama 35124
Phone: (205) 338-7273         *s/ John W. Rea*
jrea@tfrbf.com             John W. Rea


BISHOP COLVIN, LLC
1910 First Avenue North
Birmingham, Alabama 35203
Phone : (205) 251-2881       *s/Carl Johnson*
Fax    : (205) 254-3987       Carl Johnson
carljohnson@bishopcolvin.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that there are no known non-CM/ECF participants for mailing by United States Postal Service, and that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing on the 19th day of July, 2024, to the following:

Otis Stewart, Jr., Esq.
The Stewart Firm, LLC
208 23rd Street North
Birmingham, AL 35203

Mark S. Boardman
Grant M. Howard
BOARDMAN, CARR, PETELOS, WATKINS,
        & OGLE, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211

*s/Carl Johnson*
Carl Johnson